UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **PATRICIA TAYLOR,** | ) | CASE NO.1:12CV708 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| Vs. | ) | |
| | ) | |
| **JAVITCH, BLOCK & RATHBONE, LLC., ET AL.,** | ) | OPINION AND ORDER |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Defendant Javitch, Block & Rathbone, LLC's Motion to Dismiss (ECF # 6) and Defendant State Farm Mutual Automobile Insurance Joinder in Motion to Dismiss or, in the Alternative, Motion for Judgment on the Pleadings (ECF # 8). For the following reasons, the Court grants both Motions and Dismisses Plaintiff's Complaint.

**Procedural Background**

On February 8, 2012, Plaintiff filed her Complaint with the Cuyahoga County Court of Common Pleas. On March 23, 2012, Defendants removed the case to United States District Court based on federal question jurisdiction. On March 27, 2012, Defendant State Farm Mutual

1

Automobile Insurance ("State Farm") filed its Answer to the Complaint. On March 28, 2012, Defendant Javitch, Block & Rathbone LLC ("Javitch") filed its Motion to Dismiss, and on April 2, 2012, State Farm filed its Joinder in Motion. These Motions are now fully ripe and ready for ruling.

### Factual Background

Plaintiff's Complaint alleges two claims arising from Defendants' attempts to collect a debt after the debt was discharged in bankruptcy proceedings. According to Plaintiff's Complaint, she was a debtor in a bankruptcy case filed with the United States Bankruptcy Court, Northern District of Ohio, Case No. 11-12240, filed under Chapter Seven of Title II of the United States Code. As a result of the proceedings in bankruptcy, her debt, including the debt owed State Farm, was discharged on June 28, 2011. State Farm was a scheduled creditor in Plaintiff's bankruptcy case and received notice of the discharge. However, Defendant Javitch, a debt collector as defined by the Fair Debt Collections Practices Act ("FDCPA")and retained by State Farm to collect on a judgment it obtained against Plaintiff, continues to garnish Plaintiff's wages in violation of the bankruptcy discharge and the FDCPA. Plaintiff further alleges Defendants are using false, deceptive or misleading representations in their attempts to collect the debt. As a result, Plaintiff has suffered injury.

### Defendants' Motions

Defendants contend Plaintiff's Complaint fails to allege claims upon which relief may be granted because the debt at issue is not a consumer debt subject to the FDCPA. According to Defendants' Motions, sometime in 2009, Javitch, on behalf of its client State Farm, brought an action against Plaintiff in Cuyahoga County Court of Common Pleas case No. CV 09 703760.

The lawsuit alleged Plaintiff negligently entrusted her vehicle to a third party who was uninsured. The uninsured driver negligently and/or intentionally operated Plaintiff's vehicle, resulting in injury to an insured of State Farm.  State Farm paid its insured's claim and, pursuant to its policy of insurance with its insured, became subrogated to its insured's rights.  State Farm brought suit to recover its damages which resulted from the tortious conduct of the driver of Plaintiff's vehicle and Plaintiff's own negligent conduct.  Plaintiff subsequently failed to answer State Farm's Complaint and State Farm obtained a Default Judgment against Plaintiff.   Javitch, on behalf of State Farm, filed a garnishment of Plaintiff's earnings on August 18, 2010.  In March 2011, Plaintiff filed her bankruptcy case.

Defendants argue that the debt at issue is the result of a tort claim and not a consumer debt.  Therefore, it does not fall within the ambit of the FDCPA.  Furthermore, insofar as Plaintiff's Complaint at Count One states a claim for violation of a bankruptcy discharge, federal law does not provide a private cause of action for such a violation.

### Standard of Review

After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings.  Fed. R. C.iv. P. 12(c).  A motion for judgment on the pleadings is governed by the same legal standard as a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted.  *Almedares v. Palmer*, 284 F. Supp. 2d 799, 802 (N.D. Ohio 2003).   Factual allegations contained in a complaint must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, (2007). *Twombly* does not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  "In reviewing a motion to dismiss, we

construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Dismissal is warranted if the complaint lacks an allegation as to a necessary element of the claim raised. *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485 (6th Cir. 1990). The United States Supreme Court, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), discussed *Twombly* and provided additional analysis of the motion to dismiss standard:

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusion, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-plead factual allegations a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id*. at 1950.[1]

Lastly, a Rule 12(c) motion "is granted when *no material issue of fact* exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991) (emphasis added). When a court is presented with a Rule 12(b)(6) motion, it may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein. *See Amini v. Oberlin Coll.,* 259 F.3d 493, 502 (6th Cir.2001).[2]

---

[1] Plaintiff relies on Ohio caselaw and Ohio Rules of Civil Procedure in her discussion of the appropriate standard of review on a motion to dismiss. However, federal common law and Federal Rules of Civil Procedure govern claims brought in federal district court. See *Gafford v. General Electric Co.,* 997 F.2d 150, 165-66 (6th Cir.1993), (" The Federal Rules of Civil Procedure are the rules of practice which apply to civil actions in the federal courts, regardless of whether jurisdiction is based on federal question or diversity of citizenship.")

[2] Because the Court may consider public records, which include Court filings and docket entries, the Court does not need to convert this Motion for Judgment on the Pleadings to a summary judgment since the information necessary to render its ruling is appropriately considered by the Court under Rule 12(c).

**Law and Analysis**

"The FDCPA was enacted to 'eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" *Montgomery v. Huntington Bank,* 346 F.3d 693, 698 (6th Cir. 2003) quoting 15 U.S.C. § 1692(e).  The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5).  The FDCPA does not provide a cause of action against every attempt to collect on a debt.  As courts outside this district have held, "the FDCPA limits its reach to those obligations to pay arising from consensual transactions, where parties negotiate or contract for consumer-related goods or services." *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.,* 111 F.3d 1322, 1326 (7th Cir.1997) (citing *Mabe v. G.C. Serv. Ltd. P'shp,* 32 F.3d 86, 88 (4th Cir.1994).

Defendants contend the debt at issue is not a consumer debt.  There is no factual dispute that the underlying debt was the result of a default judgment against Plaintiff in state court for her tortious conduct.  Plaintiff's state court Complaint alleged one count against Plaintiff for negligent entrustment of her vehicle.  Plaintiff defaulted and State Farm obtained a default judgment against Plaintiff on its negligent entrustment claim.

The central dispute concerns whether the debt is a consumer debt as defined by the FDCPA.  Plaintiff contends the debt at issue is a consumer debt because it "arises from a

consumer transaction to purchase automobile insurance for household and family purposes." (Plaintiff's Response pg. 8). The parties have not presented and the Court is unaware of any Sixth Circuit precedent regarding this issue. Instead, Plaintiff relies on the case of *Hamilton v. United Healthcare of Louisiana, Inc.,* 310 F.3d 385 (5th Cir. 2002). In *Hamilton,* the plaintiff was seriously injured when the car in which he was a passenger was involved in a single vehicle accident. Hamilton made a claim for benefits on his father's employer's group insurance plan. Hamilton was also covered by his father's uninsured/underinsured motorist insurance coverage. Both insurers paid benefits on behalf of Hamilton. The group insurer then sought reimbursement from Hamilton's father's UM/UIM insurer and sought the same from Hamilton under its subrogation contract clause. Hamilton then brought suit against the group insurer for its collections efforts, alleging those actions violated the FDCPA.

The defendants in the *Hamilton* case relied, in turn, on an Eleventh Circuit case captioned *Hawthorne v. Mac Adjustment, Inc.,* 140 F.3d 1367 (11th Cir. 1998). In *Hawthorne*, the plaintiff was involved in a car accident allegedly due to her own negligence. The other party to the accident incurred damages and obtained payment from its own insurer. The injured party's insurer then subrogated its rights to reimbursement to another party who sought reimbursement from Hawthorne. Hawthorne filed suit against the subrogated third party alleging its collection attempts violated the FDCPA. In determining the debt sought was not subject to the FDCPA, the Eleventh Circuit held, "when we speak of 'transactions,' we refer to consensual or contractual arrangements, not damage obligations thrust upon one as a result of no more than her own negligence." *Id* at 1371.

The Eleventh Circuit, in *Hawthorne* concluded:

> Because Hawthorne's alleged obligation to pay Mac Adjustment for damages arising out of an accident does not arise out of any consensual or business dealing, plainly it does not constitute a "transaction" under the FDCPA. Moreover, the fact that Mac Adjustment may have entered into a contract with the insurer for subrogation rights does not change the fact that no contract, business, or consensual arrangement between Hawthorne *and* the damaged party, its insurer, or Mac Adjustment exists. Consequently, the FDCPA does not apply because this is not a transaction.

*Id.*

Meanwhile, in the *Hamilton* case, the Fifth Circuit, in finding the debt involved arose out of a consumer transaction, held the debt did fall under the ambit of the FDCPA. The Fifth Circuit distinguished the *Hawthorne* case and reasoned:

> There is no question that the obligation to pay arose out of Hamilton's transaction of purchasing insurance. HRI is simply incorrect in its assertion that the obligation to pay arose out of a tortious act. *Hawthorne* itself suggests that Hamilton's obligations arose out of a consumer transaction for purposes of the FDCPA. As opposed to *Hawthorne,* where Hawthorne's obligations arose from tort law, Hamilton's obligations arose from a business transaction where Hamilton contracted for personal and family services, i.e., insurance. Moreover, the plain meaning of "arising out of" as "stemming from" leads us to conclude that the obligation to pay arose from the contract/transaction for insurance.

*Id.* at 392.

Defendants rely on *Hawthorne*, finding it analogous to the facts before this Court, and the Court agrees.  The single distinguishing feature in the two cases cited above is the contractual relationship between Hamilton and his insurer.  As acknowledged by the Fifth Circuit in *Hamilton*, it was Hamilton's contract with his own insurer that created the debt obligation whereas in *Hawthorne*, the debt obligation arose from her own tortious acts.   In the facts before the Court, it is clear Plaintiff has no contract with Defendants, and did not engage in a business transaction with Defendants from which the debt at issue arose.  Thus, this case is analogous to

7

*Hawthorne*, and the Court finds the debt at issue is not a "debt" as defined by the FDCPA and Plaintiff's FDCPA claims fail as a matter of law.[3]

As referenced in *Hawthorne*, this conclusion is also supported by the Federal Trade Commission's ("FTC")staff commentary on the FDCPA.  The FTC is the regulatory body charged with enforcement and administration of the FDCPA.  The FTC commentary states the term "debt" "does not include: ...tort claims, because they are not debts incurred from a 'trans[action] (involving purchase of) property...or services...for personal, family or household purposes.'" *Hawthorne,* at 1372, citing 54 Fed. Reg. 50,097 (1988).

Insofar as Plaintiff's Complaint at Count One states a claim for violation of a bankruptcy discharge injunction, the Sixth Circuit has expressly held there is no private cause of action for violation of a discharge injunction under 11 U.S.C. § 524 of the Bankruptcy Code.  See *Pertuso v. Ford Motor Credit,* 233 F.3d 417, 419 (6th Cir. 2000).

Defendants, in an abundance of caution, further argue that insofar as Plaintiff's claim at Count One of her Complaint alleges state law wrongful execution claims, they are preempted by the Bankruptcy Code.  The Court holds that nowhere in Plaintiff's Complaint is there an indication that Count One states a claim for violation of a state law nor does it present a cause of action under Ohio law.  The complaint must "give the defendants 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"*Lillard v. Shelby County Bd. of Educ.,* 76 F.3d 716, 726-27 (6th Cir.1996).  The Court's conclusion that the Complaint fails to allege a

---

[3] Insofar as Plaintiff alleges two separate FDCPA claims under sections 1692d and 1692e and in counts one and two of her Complaint, both claims are dependent on the existence of "debt"as defined by the FDCPA.

state law violation for wrongful execution is further supported by Plaintiff's complete silence on the claim in her Response to Defendants' Motions to Dismiss and/or Judgment on the Pleadings. Plaintiff neither defends nor even addresses Defendants' arguments for dismissal of any purported state law claims.[4]

Therefore, for the foregoing reasons, the Court grants Defendants' Motions to Dismiss and Judgment on the Pleadings and dismisses Plaintiff's Complaint with prejudice.

IT IS SO ORDERED.

s/ Christopher A. Boyko
CHRISTOPHER A. BOYKO
UNITED STATES DISTRICT JUDGE

DATED June 22, 2012

---

[4] The Court also holds that the Complaint fails to allege any facts indicating improper conduct by State Farm and State Farm is entitled to Judgment on the Pleadings because Plaintiff's claims against State Farm are not plausible without some factual support of improper conduct.